# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ERIC S. CONLEY-EAGLEBEAR,**

        Plaintiff,

v.                                               **Case No. 14-cv-1175-pp**

**FRANK MILLER,
ROB RASMUSSEN,
and KURT WAHLEN,**

        Defendants.

## DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT (DKT. NO. 80)

        The plaintiff, a Wisconsin state prisoner, is representing himself. He filed this lawsuit under 42 U.S.C §1983, claiming that defendant City of Racine Police Officer Frank Miller used excessive force when he shot the plaintiff, that defendant City of Racine Police Officer Rob Rasmussen directed or acquiesced in the use of excessive force, and that defendant Racine Police Chief Kurt Wahlen failed to properly train his officers. Dkt. No. 8. On February 17, 2016, the court denied the plaintiff's motion for summary judgment, and granted the defendants' motion for summary judgment. Dkt. No. 75. Judgment was entered on February 18, 2016. Dkt. No. 76. The plaintiff has filed a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e).

1.    <u>Standard of Review</u>

        "Rule 59(e) allows a court to alter or amend a judgment only if the petitioner can demonstrate a manifest error of law or present newly discovered

1

evidence." Obriecht v. Raemisch, 517 F.3d 489, 494 (7th Cir. 2008) (citing Sigsworth v. City of Aurora, Ill., 487 F.3d 506, 511-12 (7th Cir. 2007)). A "manifest error" is a "wholesale disregard, misapplication, or failure to recognize controlling precedent." Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (citation omitted). Further, "[m]otions under Rule 59(e) cannot be used to present evidence that could have been presented before judgment was entered." Obriecht, 517 F.3d at 494. Whether to grant a motion to amend judgment "is entrusted to the sound judgment of the district court." In re Prince, 85 F.3d 314, 324 (7th Cir. 1996).

2.  Parties' Arguments

The plaintiff contends that the court should have given him an opportunity to properly support his facts instead of omitting so many facts from Plaintiff's Proposed Findings of Fact that failed to cite to the record. Dkt. No. 80 at 2. He asserts that these omitted facts demonstrate that "there is a genuine dispute as to material fact entitling him to judgment as a matter of law." Dkt. No. 80 at 3.

Specifically, the plaintiff contends that the court erroneously failed to consider his allegations that he was shot in the back. Dkt. No. 80 at 3-4. He also states that the medical records "absolutely support Plaintiff's assertion that his back was facing Miller when Miller shot him twice; Plaintiff's 'side was [not] facing Miller in a bladed fashion.'" Dkt. No. 80 at 4. The plaintiff cites to defendant Rasmussen's statement that "when defendant Miller shot the plaintiff, he never saw a firearm in the Plaintiff's hand, and the Plaintiff's back

2

was facing the defendants." Dkt. No. 80 at 4. Finally, the plaintiff contends that the court should not have relied on Helman v. Duhaime, 742 F.3d 760 (7th Cir. 2014). He argues that Helman is distinguishable because, unlike the suspect in that case (who was shot by a police officer while reaching for his gun), in this case Miller and Rasmussen were not on the scene for the purpose of arresting the plaintiff, because the plaintiff was not a suspect to a crime when the officers arrived.

In response, the defendants contend that the plaintiff has not met the legal requirements for a motion to alter or amend judgment under Rule 59(e). According to the defendants, the plaintiff's failure to follow federal and local rules relative to summary judgment motions is not a reason to alter or amend the court's judgment. Dkt. No. 82 at 2.

The defendants also contend that the court did not commit a manifest error of law in its consideration of admissible facts to supports its decision and order. They state that, contrary to the plaintiff's contention that the court should have considered evidence that he was shot in the back while running from the police, and that the plaintiff had discarded his gun prior to being shot, the court *did* find that the plaintiff was shot in the back, citing evidence provided by the plaintiff. Dkt. No. 82 at 4. The defendants further note that the court cited to the plaintiff's evidence that the officer observed two entry wounds in his shoulder and buttock, and that the medical reports state there were two wounds in the back of his body. Id.

3

The defendants also state that the plaintiff has not provided evidence that defendant Miller had subjective knowledge that the plaintiff had discarded his gun at any time before he shot the plaintiff. Id. Rather, the admissible evidence supports the fact that defendant Miller saw evidence that the plaintiff had a gun before shooting the plaintiff. Id.

In addition, the defendants contend that the court's reliance on Helman was not erroneous, "given the Plaintiff's admission that he had a firearm tucked in his waistband underneath his shirt while walking and being observed by Defendant Miller, and the barrel of the gun was located at his knee." Dkt. No. 82 at 5. According to the defendants:

> The admissible evidence unrefuted by Plaintiff is that during Defendant Miller's foot pursuit of Plaintiff, the Plaintiff made an extremely exaggerated draw motion with his right hand from his pants and Defendant Miller saw a gun in Plaintiff's right hand . . .; and that Defendant Miller saw the Plaintiff with the gun in his hand, and rotating toward his direction . . . .

Dkt. No. 82 at 5-6.

3. Court's Summary Judgment Decision and Order

In granting the defendants' motion for summary judgment, the court concluded that the plaintiff had not identified any genuine issues of material fact:

> The plaintiff's three "disputed factual issues" are not "material," as required by Rule 56.
>
> First, the court concludes that a material dispute does not exist as to which way the plaintiff was facing when Miller shot him. The defendants' submissions indicate that the plaintiff began to turn toward Miller, made an exaggerated gun-drawing motion, defendant Miller saw the gun, and the plaintiff's side was facing Miller in a bladed fashion. The defendants did not assert that the

4

plaintiff was facing Miller head-on; he had had his back to Miller, and was in the process of turning when he was shot (a fact borne out by the medical records the plaintiff attached).

In contrast, the plaintiff's averments in his sworn amended complaint and his declaration conflict. In his sworn amended complaint, the plaintiff avers: "I was speaking to Jessica Hubrich on the cell phone belong[ing] to my girlfriend Renee and fleeing from the police with no gun on me and I got shot in my back two times by order of Police Officer Rasmussen[.]" Dkt. No. 8 at 5 ¶ 11. In his declaration, however, the plaintiff avers that once he exited the door into the courtyard, he

> withdrew a firearm that I had concealed in my waist band. Once I withdrew the firearm I threw it towards some bushes and continued to run to the wooden fence straight from the courtyard doors. Once I reached the wooden fence I reached my right hand upward to attempt to climb over the fence when at that moment I was shot two times.

Dkt. No. 68 at 1-2.

The court is not required to consider the facts set forth in these two filings, see McNeil v. United States, 508 U.S. 106, 113, (1993); Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir. 2008). The fact that the plaintiff tells two different stories in the filings supports the court's conclusion that his version of events does not raise a genuine issue of material fact regarding which way he was facing when he was shot. See Burton v. Downey, 805 F.3d 776, 785 (7th Cir. 2015) (citing Scott v. Harris, 550 U.S. 372, 380 (2007)). And again, the fact that the plaintiff had—and admits that he had—a firearm in his waistband as he was fleeing, and that he pulled it out of his pants—and admits that he did so—while he was fleeing, makes the question of which direction he was facing when Miller shot him immaterial.

Second, the defendants do not deny that defendant Miller shot the plaintiff in the back of his body. The plaintiff's medical records from his exhibits, Dkt. No. 42-1, describe the gunshot wounds as located toward the back and side of his body. See Dkt. No. 42-1 at 1 (shot "one time to the buttock area and once to the left arm"); Id. at 5 (gunshot wound "to the left hip"), Id. at 7 ("left thigh/buttock gunshot wound"). The evidence, and the defendants' admissions, demonstrate that both facts are true—the plaintiff had

a wound to the back of his body, and one to the side. That fact is not material to the question of whether Miller used excessive force.

    Finally, the defendants do not deny that the plaintiff was not wanted for committing a crime on or before the chase on June 3, 2010. Nothing in the record indicates that Miller and Rasmussen chased the plaintiff, or that Miller shot him, because of a belief that he was wanted for a crime. The reason defendant Miller fired his weapon is because he believed that the plaintiff posed a threat of serious physical harm. Thus, there is no dispute—material or otherwise—about the fact that the plaintiff was not wanted before June 3, 2010.

Dkt. No. 75 at 11-13.

After concluding that the plaintiff had identified no genuine issues of material fact, the court determined that the defendants were entitled to judgment as a matter of law:

    A plaintiff has a constitutional protection against being shot on sight if he did not put anyone else in imminent danger or attempt to resist arrest for a serious crime. Weinmann, 787 F.3d at 448 (kicking down a door and immediately shooting an armed suicidal person who is neither resisting arrest nor threatening anyone save himself is an excessive use of force); cf. DeLuna v. City of Rockford, 447 F.3d 1008, 1011-12 (7th Cir. 2006) (officer's use of deadly force was reasonable when suspect said "I've got something for you. You are going to have to kill me," and refused to raise his hands or stop walking toward the officer). In Garner, 471 U.S. at 21, the Court held that it was unreasonable to kill a "young, slight, and unarmed" burglary suspect by shooting him in the back of the head while he was running away on foot, and when the officer "could not reasonably have believed that [the suspect] . . . posed any threat," and "never attempted to justify his actions on any basis other than the need to prevent an escape."

    On the other hand, the Seventh Circuit has held that an officer who shoots a suspect when the suspect is reaching for his firearm exhibits a response that is "objectively reasonable," and thus cannot be found to have violated that suspect's Fourth Amendment rights. Helman v. Duhaime, 742 F.3d 760, 763 (7th Cir. 2014).

6

a wound to the back of his body, and one to the side. That fact is not material to the question of whether Miller used excessive force.

    Finally, the defendants do not deny that the plaintiff was not wanted for committing a crime on or before the chase on June 3, 2010. Nothing in the record indicates that Miller and Rasmussen chased the plaintiff, or that Miller shot him, because of a belief that he was wanted for a crime. The reason defendant Miller fired his weapon is because he believed that the plaintiff posed a threat of serious physical harm. Thus, there is no dispute—material or otherwise—about the fact that the plaintiff was not wanted before June 3, 2010.

Dkt. No. 75 at 11-13.

After concluding that the plaintiff had identified no genuine issues of material fact, the court determined that the defendants were entitled to judgment as a matter of law:

    A plaintiff has a constitutional protection against being shot on sight if he did not put anyone else in imminent danger or attempt to resist arrest for a serious crime. Weinmann, 787 F.3d at 448 (kicking down a door and immediately shooting an armed suicidal person who is neither resisting arrest nor threatening anyone save himself is an excessive use of force); cf. DeLuna v. City of Rockford, 447 F.3d 1008, 1011-12 (7th Cir. 2006) (officer's use of deadly force was reasonable when suspect said "I've got something for you. You are going to have to kill me," and refused to raise his hands or stop walking toward the officer). In Garner, 471 U.S. at 21, the Court held that it was unreasonable to kill a "young, slight, and unarmed" burglary suspect by shooting him in the back of the head while he was running away on foot, and when the officer "could not reasonably have believed that [the suspect] . . . posed any threat," and "never attempted to justify his actions on any basis other than the need to prevent an escape."

    On the other hand, the Seventh Circuit has held that an officer who shoots a suspect when the suspect is reaching for his firearm exhibits a response that is "objectively reasonable," and thus cannot be found to have violated that suspect's Fourth Amendment rights. Helman v. Duhaime, 742 F.3d 760, 763 (7th Cir. 2014).

6

> In this case, the plaintiff admits that he drew a very large gun from his waistband. The defendants' facts demonstrate that he did so in an exaggerated manner, and that he looked like he might raise the firearm toward Miller or Rasmussen. Not knowing what the plaintiff was going to do, Miller acted quickly, and fired his weapon. The plaintiff posed a serious threat of physical harm to the officers, and potentially to the community at large. Under the circumstances, defendant Miller's response was "objectively reasonable," did not constitute excessive force, and did not violate the plaintiff's Fourth Amendment rights.
>
> Because there are no genuine issues of material fact in dispute, and because the defendants are entitled to judgment as a matter of law, the court will deny the plaintiff's motion for summary judgment and grant the defendants' motion for summary judgment.

Dkt. No. 75 at 13-15.

4. Discussion

Both the Local Rules and the Federal Rules of Civil Procedure require a party's proposed findings of fact to cite to evidentiary materials in the record. See Fed. R. Civ. P. 56(c)(1); Civil L.R. 56(b)(1), (2) (E.D. Wis.). The court did not include in the "Facts" section of its summary judgment order many of the facts from the Plaintiff's Proposed Findings of Fact, because many of them did not cite to the record. Dkt. No. 75 at 2. A court has discretion to enforce its local rules, even with regard to a *pro se* litigant. See McNeil v. United States, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); Pearle Vision, Inc. v. Romm, 541 F.3d 751, 758 (7th Cir.2008). Here, the court acted within its discretion when it concluded that the plaintiff's filings failed to comply with local rules, and as a consequence essentially accepted as true many of the defendants' proposed facts. See Turner v. Cox, 569 Fed.. App'x 463, 467 (7th Cir. 2014).

7

Despite the fact that the plaintiff's proposed findings did not comply with the federal and local rules, however, the court did reference the plaintiff's sworn amended complaint and his sworn Declaration in the "Discussion" section of its summary judgment order. And, as described above, the court determined that it was not required to accept as true the facts set forth in the filings, because they told two different stories.

The court's summary judgment order demonstrates that the plaintiff's remaining arguments lack merit. First, the court acknowledged that the facts supported an inference that he was shot in the back. Second, the court referenced the plaintiff's medical records. Finally, the court acknowledged that the officers did not arrive on the scene for the purpose of arresting the plaintiff. The court granted summary judgment in favor of the defendants even after finding the above facts (the facts the plaintiff argues that the court disregarded).

The plaintiff has not shown that the court's summary judgment order contains a manifest error of law. Accordingly, the court will deny the plaintiff's motion for reconsideration.


8

Case 1:14-cv-01175-PP   Filed 05/31/16   Page 8 of 9   Document 85

5. Conclusion

The court **DENIES** the plaintiff's motion to alter or amend judgment. Dkt. No. 80.

Dated in Milwaukee, Wisconsin this 30th day of May, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge

9

Case 1:14-cv-01175-PP   Filed 05/31/16   Page 9 of 9   Document 85